State v. Ellis.

---

## State *vs.* Amanda Ellis et al.

A person convicted under the act entitled " An act to describe, apprehend and punish disorderly persons," passed June 10th, 1799, (*Nix. Dig.* 857) cannot be committed to the county jail by a justice of the peace, unless such jail has been made a work-house by the proper authority.

On *habeas corpus* to the sheriff of the county of Mercer.

This case came before the Chief Justice, and was decided by him in vacation. The facts sufficiently appear in the opinion delivered.

The Chief Justice. From the sheriff's return to the writ, it appears that the prisoners are detained in his custody by virtue of a warrant of commitment by the mayor of the city of Trenton, a copy whereof is annexed to the writ. The warrant shows that the prisoners were charged with being disorderly persons, within the intent and meaning of the act entitled " An act to describe, apprehend, and punish disorderly persons," and were sentenced " to the common jail of the county of Mercer, to be kept at hard labor for the term of twenty days, and

thence until they give security to keep the peace and pay the costs of conviction."

The statute under which the prisoners were sentenced makes it the duty of the magistrate to commit such disorderly person, when convicted, to the *work-house* of the city, town or county, there to be kept at hard labor for any term not exceeding three calendar months. The material objection to the legality of the sentence is, that the magistrate was not authorized to sentence the prisoners to confinement · in the county jail. The act directs that offenders against the law shall be committed to the work-house of the city, town, or county. Is the county jail a work-house, within the meaning of the act? If it is not, the sentence is clearly unauthorized by law. Workhouses and jails, being both used for the purpose of penal confinement, are not unfrequently regarded as identical. But they are entirely distinct in their origin, object and government, and in all our state legislation they are treated as entirely distinct institutions. County jails were originally designed for the confinement of criminals or persons charged with offences against the law; and by the common law, justices of the peace can imprison nowhere but in the county jail. · *Jac. Law Dict.*, " *Gaol.*" The statute of 6 *Geo.* 1, *ch.* 19, § 2, to avoid this difficulty, authorizes justices of the peace to commit vagrants and other criminals either to the common jail or house of correction, as they in their judgment should think proper. It was entirely distinct from the debtors' prison. *Ibid.* The county jail has always been, and still is, under the control of the sheriff of the county. By an English statute, 14 *Ed.* cap. 10, it is enacted that the sheriffs shall have the custody of the jails as before, and shall put in underkeepers, for whom they will answer; and by our own statute (*Nix. Dig.* 751, § 13,) it is enacted that the sheriff of each county in the state shall have the custody and charge of the jail and of the prisoners, and shall be responsible for the appointment of any keeper whom he shall appoint.

State v. Ellis.

Work-houses were originally designed for the relief and employment of the poor. They were maintained by the parishes, and were under the charge of the church wardens and overseers of the poor of the parish. *Jac. Law Dict. Poor III.,* 1. In the queen's instructions to Lord Cornbury, the first colonial governor of New Jersey, he is instructed to endeavor, with the assistance of the council, to provide for the building of public work-houses, in convenient places for the employment of *poor and indigent people. Grants and Concess.* 642.

Nothing appears to have been done in pursuance of this instruction. The first public institution of work-houses in this state, excepting those created by special act for particular towns, was under the act of 1799. *Nix. Dig.* 898. By this act, the object and character of the institution is materially altered. They are authorized to be built by the board of chosen freeholders of the several counties, and put under their superintendence and government. They are to appoint the master or keeper. It is made a place of confinement for persons sentenced to imprisonment at hard labor, for disorderly persons, and for disobedient or intemperate slaves or servants.

By an act passed on the 2d of March, 1847, the chosen freeholders of the counties of Essex, Passaic, and Burlington were authorized to convert such parts of the jails of their respective counties as to them might seem proper, into work-houses, taking care to reserve space and room enough in said buildings for the uses and purposes of the public jails, in order that the act for the establishing of work-house, might be carried into as full effect as though the said work-houses had been built or purchased. *Pamph. L.* 1847, *p.* 145. On the 6th of March, 1847, a similar act was passed, extending to all the counties of the state. The board of freeholders of Mercer county have never built or purchased a work-house under the authority of the act of 1797; nor have they, so far as appears, ever authorized any part of the jail to be con-

verted into a work-house under the authority of the act of 1747. The consequence is, that there is in this county no work-house, and consequently no mode in which the penalties of the law against vagrants and disorderly persons can be enforced.

In making out this warrant, the mayor acted, it is understood, in accordance with what had long been the practice of the city magistrates. The origin of this practice it is not difficult to discover.

By the act of 27th November, 1808, the mayor, recorder, and aldermen of the city were authorized to imprison all offenders in the jail or work-house then erecting on Academy street; and the said jail was declared to be a work-house within the intent and meaning of the act to establish work-houses, and also within the intent and meaning of the act to punish disorderly persons. *Rev. Laws* 538. The same provisions were embodied in the city charter of 1837, sections 28, 29, and 30.

By a supplement to the city charter, passed in 1834, the common council were authorized to erect and maintain a work-house distinct from the common jail. But this act was never carried into effect.

By a supplement to the city charter, passed on the 28th of February, 1840, (2 *Harr. Com.* 411) the Court of Quarter Sessions of the city was abolished, and its business transferred to the Quarter Sessions of the county. By the 3d section of the act, the mayor, recorder, and aldermen are declared to have all the powers and authorities of justices of the peace of the state; and it was further enacted, that it should be lawful for them, or either of them, to commit all offenders against the laws of this state, whom by law they, or either of them, are authorized to imprison, to the common jail of the county of Mercer. It has been supposed that the section gives to the city magistrates power to imprison in the county jail all offenders whom they were previously authorized to commit to the city jail and *work-house*. The obvious design of the section,

State v. Ellis.

however, was to confer upon the city magistrates the same powers and authorities, and no other, as were vested in other justices of the peace within the county. It was not designed to enlarge their powers or to alter the laws touching the mode of punishment.

The commitment is illegal, and the prisoners must be discharged from custody.

CITED *in McDonald* v. *Vermilye*, 10 *Vr.* 285.