STATE, EX REL. EDWARD T. McDONALD, v. JOHN G. VER-
MILYE, WARDEN, &c.

By act approved March 18th, 1874, (*Laws*, p. 313,) the penitentiary, or work-house, in the township of Caldwell, is part of the common jail of the county of Essex; and a person confined in the jail at Newark, under the bastardy act, may be removed, by the order of the board of freeholders, to said penitentiary.

On *habeas corpus* to bring the body of the relator, Edward T. McDonald, before the Supreme Court, directed to John G. Vermilye, warden of the Essex county penitentiary.

The facts appear in the opinion.

Argued at February Term, 1877, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the relator, *S. Kalisch.*

For the respondent, *J. W. Taylor.*

The opinion of the court was delivered by

SCUDDER, J. The return to the writ of *habeas corpus,* and the state of facts agreed upon by the counsel of the respective parties, show that the relator was committed to the common jail of the county of Essex, by the warrant of two justices of that county, who had adjudged him to be the father of a bastard child, born in and charged unto the city of Newark. Having refused to enter into bond with sureties to obey and comply with the order of filiation, or appear at the next Court of Quarter Sessions to prosecute an appeal, he was committed, under Section 13 of the act for the maintenance of bastard children. (*Rev., p.* 72.) The place to which he was committed, and which is authorized by the above section, is the common jail of the county, there to remain until discharged according to law.

After such commitment, he was transferred, by the order of the board of chosen freeholders of the county of Essex, to the county penitentiary at Caldwell, where he now remains a prisoner.

It is claimed that his confinement under this order is illegal, and hence this writ is brought.

It is not alleged that there was any want of jurisdiction or illegality in the original commitment to the county jail. Neither is there any valid objection to the form of the order made by the board of freeholders, through their duly appointed committee; the case agreed upon admits that the order was made, and made by the proper committee of the board. It was, therefore, the action of the board, and not the unauthorized act of individual freeholders.

That the order was merely verbal, may be a proper sub-

ject for criticism, because of the danger of failure of proof and due authentication.     But the statute does not require the transfers from the county jail to the penitentiary to be made in writing, and hence a verbal order, if there be no dispute that it was made by proper officers, is sufficient.

The material question is, whether the board of freeholders of Essex county have the authority to transfer a prisoner in the county jail, committed as the putative father of a bastard child, to the county penitentiary.     He is sensitive from his constrained association with criminals, and claims that he belongs to a class of offenders to whom a milder punishment is given by the statute.     We shall not stop to discuss this very debatable question, but will examine the true construction of the act under which he is held.

By an act approved February 27th, 1857, the charge of keeping the jails and the custody of the prisoners in the counties of Essex and Hudson, were transferred from the sheriffs to the boards of chosen freeholders, and thereby, also, the prisoners were to be employed, and in some cases their time of service was regulated.     It is an old idea in our state that prisoners confined in our jails should be employed in work-houses instead of burdening the public by the expense of their support.     See *Act of* 1799, *Nix. Dig.* 1055.     The boards of chosen freeholders of the several counties in the state, were authorized to build or purchase a work-house. Persons sentenced to hard labor and imprisonment for a time not exceeding six months, and disorderly persons, were to be kept at labor in the work-houses.     Two or more counties might join in establishing a work-house for their common use.

By the act of March 4th, 1847, the boards of chosen freeholders of the several counties were authorized, instead of building distinct work-houses, to convert so much of the common jails as might seem proper, into work-houses, reserving space and room enough in said jails for the use of public jails. This was to enable all counties to have a work-house within

McDonald v. Vermilye.

the buildings used by them for a common jail, at a less expense.

The two were united, and there is no idea of separation, excepting that some prisoners were to be kept at labor, while other offenders, whose sentence was only imprisonment or the payment of a fine, were not compelled to work.

The history of our laws relating to work-houses and jails and their distinctions appear in *State* v. *Ellis*, 2 *Dutcher* 219.

The act of February 27th, 1857, was passed for the benefit of the two most populous counties of our state, containing our largest cities, and was doubtless intended as a relief from the overcrowding of their common jails, and a more thorough control and enforcement of work by the prisoners, who were numerous and burdensome in their support. The boards of chosen freeholders were given the direct custody and control of the jails, instead of the sheriffs, in these counties, and they were to appoint the jailor. Section 5 enacts " that in each of said counties the jailor shall be the master of the work-house therein ; and the work-house therein, or so much of it as shall be so declared by the board of chosen freeholders, shall be part of the common jail of said county," &c.

The distinction is still kept up between those who are required to labor, as a part of the punishment of their confinement, and those who are not ; but the place is still the same— the common jail of the county, including a work-house.

The act of March 18th, 1874, passed as a supplement to the act of 1857, establishes the Essex county penitentiary, giving the custody, control and charge of the same to the board of freeholders.

Section 3 enacts that the penitentiary and the work-house which may be established in connection therewith or as a part thereof, or so much thereof as shall be so declared by said board of chosen freeholders, shall be deemed to be a part of the common jail of the said county of Essex, &c. The jail was thereby extended so as to include this new building at Caldwell, which was called a penitentiary and work-house.

McDonald v. Vermilye.

It was in effect another apartment added to the jail, with more room and greater facilities for labor and punishment.

Section 4 determines the classes who shall be required to work there during their confinement, and includes among them, persons sentenced for crime and misdemeanor, those committed under an act to describe, apprehend and punish disorderly persons, and the act for suppressing vice and immorality, and those who violate municipal ordinances, &c. The offence for which this relator is committed is not included, and he is, therefore, exempt from the requirement to labor; but he is still liable to confinement in the common jail of the county, and in this penitentiary, as a part of it, so declared to be by the board of chosen freeholders.

Section 9 enacts that all sentences to hard labor shall apply to the county jail in Newark, or the penitentiary in Caldwell; "and any person sentenced to or confined in either one, may be committed or transferred to the other, whenever the said board shall deem it expedient."

It is said, in construing this act, that the word "or" should be rendered "and," so that persons who are both sentenced and confined, can only be transferred; but there is no necessity shown for this change, to give effect to the intention of the legislature.

It was an enlarged power and control that they intended to give to the freeholders, and a manifest purpose was, to enable them, in their discretion, to relieve the crowded condition of either, and to make changes for purpose of security and discipline.

This, we are satisfied, is the true construction of this act, and the freeholders, in the exercise of the discretion given them by the act, have transferred this relator from the common jail in Newark, to the penitentiary at Caldwell, as they had the right to do.

The discharge is refused.