GEORGE VIRTUE, SHERIFF, &c., PROSECUTOR, v. THE BOARD OF FREEHOLDERS OF THE COUNTY OF ESSEX.

Submitted April 4, 1901—Decided November 11, 1901.

1. By the constitution of this state the custodianship of the common jails of the several counties of the state is vested in the sheriffs of those counties; and such custodianship cannot be transferred by the legislature to other officers to be selected by it.
2. The penitentiary of Essex county is not a common jail of the county, but a statutory "workhouse;" and the power to select its custodian rests with the legislature.

On *certiorari.*

Before Justices GUMMERE and FORT.

For the prosecutor, *Riker & Riker.*

For the defendants, *Joseph L. Munn.*

The opinion of the court was delivered by

GUMMERE, J.   The prosecutor, by this writ, attacks the validity of a resolution of the board of freeholders of Essex county, by which they decide to assume the custody of the common jail of the county and of the county penitentiary at Caldwell, and of the prisoners confined in those institutions. The object of the proceeding is to bring about a determination of the conflicting claims of the board of freeholders and of the sheriff, to the custody of the jail and the penitentiary; the contention of the board of freeholders being that it is vested in them by statute, while the sheriff claims it as a function of his office, which cannot be taken away from him by legislative enactment.

By article 13 of the constitution of 1776, the inhabitants of each of the counties of the state are required to "annually elect one sheriff," and authority is given to re-elect the same

person to the office until he should have served three years. No attempt, however, is made in that instrument to define the duties and functions of the office. Twenty years after the adoption of this constitution, on March 18th, 1796, the legislature of the state passed an act entitled "An act concerning sheriffs," by the eleventh section of which it was provided that "the sheriff in each county of this state shall have the custody, rule, keeping and charge of the gaol or gaols within such county, and of all prisoners in such gaol or gaols." *Pat. L., p.* 201. This statute has ever since remained, and still is, in force, although amended in some particulars.

In the year 1844 the present constitution was adopted, and, by article 7, section 2, paragraphs 7 and 8, it is declared that "sheriffs * * * shall be elected annually by the people of their respective counties;" and that "they may be re-elected until they have served three years, but no longer." Up to this time no change had been made in the eleventh section of the act of 1796, and it continued to remain unchanged until February 27th, 1857, when it was impliedly repealed, so far as it related to the counties of Essex and Hudson, by an act passed on that day entitled "An act to transfer the charge and keeping of the jails and the custody of the prisoners, in the counties of Essex and Hudson, from the sheriffs to the boards of chosen freeholders, and for the employment of the prisoners, and to regulate their term of service therein." *Pamph. L.* 1857, *p.* 40. It remained in full force and effect, however, in the other counties of the state until the year 1887, when the legislature passed an act entitled "An act to authorize the boards of chosen freeholders in the several counties of this state to assume and exercise the custody, rule, keeping and charge of the county jails in their respective counties, and of the prisoners in such jails, and for the regulation and management of such jails and of the prisoners therein." *Pamph. L.* 1887, *p.* 42. By the provisions of this statute the boards of freeholders of the several counties of the state were authorized to assume and exercise the custody and control of the county jails in their respective counties and of the prisoners therein, whenever any such board should decide, by the affirmative

votes of two-thirds of all its members, so to do, and should file a certificate of such decision in the office of the secretary of state; and it was provided that when such certificate should have been so filed the custody, rule, keeping and charge of the county jail in such county should no longer be in the sheriff of that county but in the board of chosen freeholders thereof, and in such jailer, keeper or warden as they should appoint for that purpose.

Prior to the enactment of this last-mentioned statute, however, and in the year 1875, the constitution of 1844 was amended, but no change was made therein with relation to the provision concerning the office of sheriff, except that the term of the office was extended to three years.

Three other acts of the legislature have been passed since 1887, bearing upon the custodianship of the common jails of the counties of the state. The first of those acts is entitled "An act to amend 'An act concerning sheriffs.'" It was passed May 16th, 1894, and by it section 14 of the act concerning sheriffs (which is the eleventh section of the original act of 1796) was amended so as to restore to the sheriffs of the several counties of the state the custody of the common jails therein, and of the prisoners confined in such jails, with a proviso that the section should not apply to counties of the second or third classes where the boards of chosen freeholders had theretofore, or might thereafter, appoint a warden or keeper of such jail; and with the further proviso that the sheriff of any county might transfer such custody to the board of freeholders of his county, who should thereupon appoint a warden, or jailer, for the same. *Pamph. L.* 1894, *p.* 378.

The second of these acts was passed on the same day (May 16th, 1894) and is a simple repealer of the act of February 27th, 1857, hereinbefore referred to, entitled "An act to transfer the charge and keeping of the jails and the custody of the prisoners, in the counties of Essex and Hudson, from the sheriffs to the boards of chosen freeholders, and for the employment of the prisoners, and to regulate their term of service therein," and of all the supplements thereto. *Pamph. L.* 1894, *p.* 597.

The third of these acts was passed on May 25th, 1894, and is entitled "An act to regulate the custody of jails and prisoners therein in counties of the first class of this state, and to repeal an act entitled 'An act to repeal an act entitled "An act to transfer the charge and keeping of the jails and custody of the prisoners, in the counties of Essex and Hudson, from the sheriffs to the boards of chosen freeholders, and for the employment of prisoners, and to regulate their terms of service therein," approved February twenty-seventh, one thousand eight hundred and fifty-seven,' and the supplement thereto which was passed May sixteenth, one thousand eight hundred and ninety-four." By this act the sheriffs in all the counties of the state of the first class are vested with the custody, rule, keeping and charge of the jail or jails within their respective counties, with the proviso, however, that the act shall not apply to any jail or penitentiary upon any county farm in any of such counties. The act then provides, by its third section, that the sheriff of any county of the first class may surrender the custody of the jail of his county to the board of freeholders of such county, and that upon such surrender the board of freeholders shall take charge of such jail and appoint a jailer or warden thereof, and such keepers as may be necessary. By the fourth section of the statute the act repealing the special law transferring the charge and keeping of the jails of Essex and Hudson counties from the sheriff to the boards of chosen freeholders is itself repealed.

The foregoing is a history of the constitutional and statutory proceedings regulating the subject of the custody of the county jails of the state.

The following facts, bearing upon the questions at issue, appear in the state of the case returned with the writ. Immediately upon the passage of the act of February 27th, 1857, the board of freeholders of Essex county assumed the custody and charge of the county jail of that county, and of the prisoners confined therein, and remained in the custody and control thereof continuously until May 25th, 1894, when Herman Lehlbach, the then sheriff of the county, took charge of the jail and its prisoners in pursuance of the provision of the act

passed on that day and hereinbefore cited. He continued in charge, however, for only a few days and then, acting. under the authority of the third section of the act last referred to, surrendered the custody of the jail and its prisoners to the board of freeholders, which body thereafter remained in charge thereof until November, 1899, when they were ousted by the prosecutor, the present sheriff of the county.

The principal questions which this case presents for decision are, *first,* whether the custodianship of the common jails, and of the prisoners confined therein, is, by the constitution of the state, vested in the sheriffs of the several counties; and, if so, then *second,* whether the legislature can transfer that custodianship to other officers to be selected by it?

As has already been stated, the constitution of 1776 makes no mention of the duties which are to be performed by the sheriff, or of the functions of his office. It merely provides for his election. And this is equally true of the constitution of 1844, as originally adopted, and as amended in 1875. But it is not to be presumed, from this fact, that the office of sheriff was one which was to have no duties or functions attached to it until they should be determined by legislation. An examination of our colonial laws will show that for a period of nearly one hundred years prior to the adoption of the constitution of 1776, there had existed in each of the several counties of the colony of New Jersey an officer known as a sheriff, the duties and functions of whose office were essentially the same as those attached to its English prototype. One of the most ancient and important of these functions was the custodianship of the county jail and of the prisoners confined in that institution. As early as the year 1503 the parliament of England declared that the sheriff should have custody of all common jails and prisoners in his county (*Stat.* 19, *Hen. VII., c.* 10), and the law in this respect remained unchanged down to the period when New Jersey ceased to be an English colony. *Com. Dig., tit. "Imprisonment," pl. F.* When the framers of the constitution of 1776 provided, in that instrument, that the inhabitants of each of the counties of the state should annually elect a sheriff, they must ·be presumed

to have known the duties and functions which had theretofore appertained to that office, as it had existed in the colony for nearly a century previous; and, by refraining from prescribing, in express words, the duties and functions which should attach to the office, to have intended that the designation of the office, *eo nomine,* should carry with it all the substantial powers, duties and functions which appertained to it at common law. And that this was the contemporaneous construction put upon this provision is apparent from the fact that, for a period of twenty years after the adoption of that instrument, no action was taken by the legislature regulating the office or defining its duties or functions in any way. At the expiration of that time the act of 1796, already referred to, was passed. What was the cause of its enactment can, now, only be surmised. It was probably due to the fact that some uncertainty existed as to the scope and extent of the powers, duties and functions appertaining to the office of sheriff, and was intended to be declaratory of the common law in that respect. It certainly added no new powers, duties or functions to the office.

It seems clear, therefore, that, by the constitution of 1776, the sheriffs of the several counties of the state were, *virtute officii,* invested with the custody of the jails in their respective counties and of the prisoners confined therein. And this is made more certain by the fact that, when the framers of the constitution of 1844 came to deal with the office of sheriff, having in mind the common law duties and functions of that office, as defined by the legislature in 1796, they accepted the clause in the earlier instrument as a complete provision on the subject.

This brings us to the second question, namely, can the legislature detach from the office of sheriff the custody of the county jail and of the prisoners confined in that institution, and commit such custody to some other officer to be selected by that body? We think this question must be answered in the negative. As was said by Mr. Justice Cole, in *State* v. *Brunst,* 26 *Wis.* 412, if the legislature can do this, no reason can be perceived why it may not also strip the office of every

other power, duty or function which pertains to it and leave to the electors of the state only the privilege of choosing an officer who would be sheriff in name but with no power to perform any of the duties or exercise any of the functions belonging to that office. The case cited, as well as *Warner* v. *People, 2 Den.* 272; *McEwan* v. *Keeler, 29 Hun* 175, and *Allor* v. *Wayne County, 43 Mich.* 76, supports the conclusion which we have reached upon this point. The only case to which we have been referred, or which we have found, supporting an opposite conclusion, is *State* v. *Dews, Charlt. R. M.* (*Ga.*) 397, which holds that a sheriff is entirely a ministerial officer, whose province is to execute duties prescribed by law and which duties may be contracted, enlarged or transferred at the will of the legislature. It is enough to say, with respect to this case, that the reasoning of the opinion does not commend itself to us.

We conclude, therefore, that the various statutes which have been referred to, so far as they deprive the sheriffs of the custody of the common jail of their respective counties and of the prisoners confined therein, and place it in the hands of boards of freeholders, are inoperative and void.

We have not overlooked the fact that in a number of cases decided in this state (*State* v. *Layton,* 4 *Dutcher* 244; *McDonald* v. *Vermilye,* 10 *Vroom* 282; *Sweeney* v. *Stevens,* 17 *Id.* 344; *Daubman* v. *Smith,* 18 *Id.* 200, and *Stiles* v. *Freeholders,* 21 *Id.* 9) it was assumed that the act of 1857 and the act of 1887, hereinabove referred to, were valid enactments. The decision in each of those cases, however, would have been the same had the opposite assumption prevailed; and the fact that the validity of those acts was assumed and not considered and determined, coupled with the additional fact that the particular phrase of the statutes now under consideration was not involved, leaves them without force as precedents.

It was vigorously contended, at the argument, by counsel for the board of freeholders that the long continued recognition by the various sheriffs and members of the boards of freeholders who have been in office since the enactment of the

statute of 1857, of the validity of that statute and of the act of 1887, shown by the uninterrupted control of the board over the jail of the county, was a practical construction of the constitutional provision involved, which would justify this court in holding that the power existed in the legislature to transfer the custody of the county jails from the sheriff to the freeholders. It is to be remembered, however, that the underlying question involved in the decision of this case, is the true meaning of the constitutional provision; and, in our judgment, its meaning is not in doubt. "Although contemporary and practical construction is entitled to great weight in the construction of constitutional provisions, where the words are of doubtful signification, or the meaning is obscure, yet, where the meaning of the constitution, interpreted by its letter and in its spirit is ascertained, such extraneous construction cannot be allowed to abrogate the text or to fritter away its obvious sense." *State* v. *Wrightson*, 27 *Vroom* 126. Nor can it be conceded, as was argued by counsel, that the act of Mr. Lehlbach, when sheriff of the county, in surrendering the custody of the jail to the board of freeholders under the apparent authority of the third section of the act of 1894, was of any materiality in determining the right to its control. If the conclusion arrived at by us, namely, that the custody of that institution is a function appertaining to the office of sheriff which cannot be taken away from it by the legislature, be sound, then, clearly, no act of an incumbent of that office, although done under apparent legislative sanction, can be operative to produce that result.

The right to the custodianship of the penitentiary at Caldwell remains to be considered.

By an act of the legislature passed February 20th, 1799, entitled "An act for the establishment of workhouses in the several counties of this state" (*Pat. L., p.* 378), the boards of chosen freeholders of the various counties of the state were authorized, whenever they might think proper, to build or purchase workhouses for the confinement therein of persons sentenced, on conviction of crime, to imprisonment at hard labor for a period not exceeding six months, and also of all

disorderly persons and others who should be ordered by law to be sent thereto. They were also authorized to appoint and hire some fit person to be master of the institution. The distinction between institutions of the character established by this act and county jails is clearly pointed out in the case of *State* v. *Ellis, 2 Dutcher* 219. Under the authority of this act (which is still in force) the board of freeholders of Essex county, about the year 1873, began the construction of the penitentiary. In the following year, however, the legislature passed a supplement to the act of February 27th, 1857 (the act which transfers the custody of the jails in the counties of Essex and Hudson to the freeholders), by which it was declared that the penitentiary should be deemed a part of the common jail of the county and should be in the custody, control and charge of the board of freeholders. *Pamph. L.* 1874, *p.* 113. As has already been pointed out, the original act is invalid; how far its invalidity affects the supplement it is not necessary to stop to determine, for, assuming for the purposes of this case that the supplement was a valid enactment, it was repealed, together with the original act, on May 16th, 1894, as has heretofore been stated. The effect of this repealer was to restore the penitentiary to its original condition as a workhouse, built under the authority of the act for the establishment of workhouses, passed in 1799, and subject to the provisions of that act. This repealer, it is true, was, in turn, attempted to be repealed by the act of May 25th, 1894, already mentioned, but this act, as has been heretofore declared, is invalid, in that it attempts to transfer the custody of the county jails of the state to the various boards of freeholders. It is invalid for another reason and that is because it plainly violates that provision of the state constitution which requires that every law shall embrace but one object, and that shall be expressed in its title. This act plainly embraces two objects, each of which is expressed in its title. The first is to regulate the custody of jails, and prisoners therein, in counties of the first class. It applies not only to the counties of Essex and Hudson, which were the only counties of the first class at the time of the enactment of the law, but also to all other counties

of the state which should, after its passage, become counties of the first class. The second object of the law was to revive the act of February 27th, 1857, and the supplements thereto, and thereby subject the regulation of the jails of the counties of Essex and Hudson to the provisions of that act. Other reasons why this statute is objectionable from a constitutional standpoint might be indicated, but it is not deemed necessary. The repealer of the act of February 27th, 1857, and of all its supplements therefore remains in force, and its effect upon the Caldwell penitentiary has already been indicated. Having been restored to its original condition as a workhouse, subject to the provisions of the Workhouse act of 1799, its custody and that of the prisoners therein, is lodged in the board of freeholders, not in the sheriff.

We conclude, therefore, that so much of the resolution under review as looks to the assumption by the board of freeholders of the custody of the county jail and of the prisoners confined therein, is invalid and must be set aside; and that, so far as it provides for the taking charge by that body of the Caldwell penitentiary, it is unobjectionable and should be affirmed.