132 N.J. Super. 283 (1975)
333 A.2d 537
JOSEPH DAVIS, a/k/a JOSEPH MC EACHIN, APPELLANT,
v.
NICHOLAS D. HEIL, CHAIRMAN, NEW JERSEY STATE PAROLE BOARD, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1974.
Decided January 31, 1975.
*286 Before Judges CARTON, CRANE and KOLE.
Mr. Gerald D. Miller argued the cause for appellant (Messrs. Miller, Hochman, Meyerson & Miller, attorneys).
*287 Mr. Mark A. Geannette, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by CARTON, P.J.A.D.
This case presents another challenge on equal protection grounds to the New Jersey parole system as it affects inmates of county correctional institutions.
Joseph Davis is currently serving a one-year term in the Hudson County Penitentiary to which he was sentenced on March 25, 1974 for possession, and possession with intent to distribute, of a controlled dangerous substance. On April 15 of that year he was sentenced for atrocious assault and battery to a term of 18 months in the Mercer County Correction Center, to be served consecutively to the Hudson County term.
Davis, on April 18, 1974, requested the State Parole Board to consider him for parole upon completion of the one-year Hudson County sentence. The Parole Board declined the request by letter of April 26, 1974, advising that aggregation of sentences to determine parole eligibility pursuant to N.J.S.A. 30:4-123.10 was not permitted for inmates of county institutions. The Parole Board further advised him that he could not be considered for parole from the Mercer County sentence because that sentence was to a county workhouse from which there can be no parole under N.J.S.A. 30:4-123.35.
Considering this denial to be a final action by a state agency from which an appeal will lie, R. 2:2-3(a), Davis filed this appeal. His claim that he has been deprived of equal protection focuses on the application of two provisions of the statutory parole system. He first challenges the application of N.J.S.A. 30:4-123.35 to deny parole eligibility to county workhouse inmates sentenced to more than a year while extending eligibility to similarly sentenced county *288 penitentiary prisoners. He also attacks the application of N.J.S.A. 30:4-123.10. That provision denies inmates of county institutions serving consecutive sentences of more than one year any right to aggregation of such sentences for the purpose of determining parole eligibility while extending that opportunity to similarly sentenced prisoners in state institutions.
New Jersey's correctional system has evolved in piecemeal fashion over the years so that today it encompasses a wide range of institutions of different purposes and under diverse jurisdiction. Not surprisingly, the parole system which has developed to serve inmates of these correctional institutions recognizes these historical distinctions and varies its treatment of inmates according to the institution to which they are confined. This court has reviewed in some detail the complex workings of the parole and correctional system in the recent case of Bonilla v. Heil, 126 N.J. Super. 538 (App. Div. 1974). We need sketch here only those elements of the system having direct application to the present case.
Of major significance in the present case is the fact that a court may select from among several institutions in sentencing an adult male offender convicted of a crime. Under N.J.S.A. 2A:164-15 the general requirement is that sentences of less than one year be served in county institutions, sentences of greater to be served in the State Prison. However, under a series of exceptions set forth in the statute, sentences of from one year to 18 months may be served in a county workhouse, in a county penitentiary or in the State Prison, at the discretion of the sentencing court.
Sentences to State Prison are for maximum and minimum terms, N.J.S.A. 2A:164-7. State Prison inmates become eligible for parole upon completion of the minimum sentences or one-third of the maximum, whichever is less, N.J.S.A. 30:4-123.10. Those with prior offenses must serve proportionately longer periods, N.J.S.A. 30:4-123.12.

*289 I

THE PENITENTIARY-WORKHOUSE DISTINCTION
Parole is authorized for inmates of county institutions under N.J.S.A. 30:4-123.35, which provides, in relevant part:
* * * [A]ny prisoner in a county penitentiary serving a term having a maximum greater than a year and who has served at least 1 year of such term shall be permitted to make application to the board for parole. * * *
The one-year requirement of this statutory provision has been construed to mean an "adjusted year of the term" with reductions for good conduct and work credits. See Bonilla v. Heil, supra, 126 N.J. Super. at 550, which holds that the one-year minimum requirement was valid even though some inmates of State Prison may become eligible for parole in less than a year.
The State Board has interpreted N.J.S.A. 30:4-123.35 as permitting parole only for inmates of county penitentiaries and, by implication, as denying parole to inmates of county workhouses. Davis, facing an 18-month sentence in the Mercer County Correction Center, a workhouse, contends that this differential treatment unlawfully discriminates against him.
This contention must be weighed against the well-settled rule that challenged statutes are presumptively valid, N.J. Sports Authority v. McCrane, 119 N.J. Super. 457, 472 (App. Div. 1971), mod. on other grounds 61 N.J. 1 (1972). An attack on a statutory classification based on the Equal Protection Clause must demonstrate that the distinction complained of bears no rational relationship to a legitimate state end. McDonald v. Bd. of Election Comm'rs of Chicago, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The New Jersey Supreme Court has applied the same standard in *290 examining classifications of criminal offenders, holding in State v. Smith, 58 N.J. 202 (1971):
* * * The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. * * * If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. * * * [at 207]
The thesis first advanced here is that the application of the statute serves to deprive him of his liberty and thus that a fundamental right is at stake. The argument proceeds that the statute can be sustained only if it satisfies a more stringent "compelling State interest" standard. This argument is without merit. The United States Supreme Court, faced with a similar argument in an attack on the New York parole system, held, in McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), that the state need only satisfy the rational relation standard. See also, Bonilla v. Heil, supra.
Whether there is a rational basis underlying the distinction between county workhouse and county penitentiary inmates for parole eligibility purposes was a question that the Bonilla court explicitly declined to decide, 126 N.J. Super. at 548, n. 8. The court in Bonilla noted a number of variations in the treatment of prisoners that were favorable to county inmates. These included the availability of a split sentence pursuant to N.J.S.A. 2A:164-16, the probability that the place of incarceration will be near the offender's place of residence so that he might be able to retain previous local employment under a work release program, and the fact that a county sentence does not constitute a prior offense under N.J.S.A. 30: 4-123.12. None of these distinctions exists as between prisoners in county workhouses and county penitentiaries.
Historically, the distinction between workhouses and other places of incarceration rested on the fact that inmates of the former were required to engage in labor to defray the cost of *291 their accommodations. The workhouse was a product of the Elizabethan Poor Law system transported to this country. See State v. Ellis, 26 N.J.L. 219 (Sup. Ct. 1857). That historical distinction has long been blurred in New Jersey. The first penitentiary established in this State, at Caldwell in Essex County, was called both a penitentiary and workhouse. McDonald v. Vermilye, 39 N.J.L. 282, 285 (Sup. Ct. 1877). Although there once existed special legislation (L. 1874, p. 313) authorizing the Essex County Penitentiary, that statute was repealed. Since 1894 the same statute (now N.J.S.A. 30:8-29) deals with the construction of both workhouses and penitentiaries. Virtue v. Essex Freeholders, 67 N.J.L. 139, 147-148 (Sup. Ct. 1901).
Today penitentiaries and workhouses are managed under the same auspices. Further, the record does not indicate, nor have we been able to discover, any essential difference in the treatment of prisoners in the two institutions. Thus, the distinction complained of by the prisoner here lacks even a viable historical basis. Whether a county inmate serving more than a year is entitled to parole eligibility seems to turn on no more than an accident of geography, as only Essex and Hudson Counties have penitentiaries.
We view the Parole Board's interpretation and application of N.J.S.A. 30:4-123.35 as creating a distinction between workhouse and penitentiary prisoners which is invalid as violative of the Equal Protection Clause. However, this court is not bound by the statutory construction employed by an administrative agency. Nevertheless, we are required to construe the statute in a fashion that would render it constitutional if it is reasonably susceptible to such interpretation. State v. Profaci, 56 N.J. 346, 350 (1970); Woodhouse v. Woodhouse, 17 N.J. 409 (1955). See also, Application of Marvin, 97 N.J. Super. 62 (1967), aff'd 53 N.J. 147 (1969), cert. den. 396 U.S. 821, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969).
As we have already noted, research into the history of workhouses and penitentiaries in this State indicates quite clearly that, at least since 1894, the terms "workhouse" and *292 "penitentiary" were used to describe the same single statutory creature. The statutory use of one or another of these terms reflects outmoded usage and represents no real distinction. In these circumstances the only reasonable construction of N.J.S.A. 30:4-123.35 is to recognize that the term "penitentiary" includes the term "workhouse," the two words signifying a single category of county correctional facility.
Therefore, we hold that parole eligibility is available to county workhouse inmates on the same conditions applicable to county penitentiary inmates under N.J.S.A. 30:4-123.35.

II

AGGREGATION OF CONSECUTIVE SENTENCES
The prisoner's attack on the Parole Board's application of N.J.S.A. 30:4-123.10 and 30:4-123.35 to deny the benefit of sentence aggregation procedures to inmates of county institutions presents a more complex situation.
It should first be noted that while the Board's letter to the prisoner indicates a blanket denial, the Attorney General's advisory opinion referred to therein is less sweeping. That advisory opinion, issued in letter form June 29, 1973, maintains that aggregation is available to county inmates when each sentence to be aggregated has a maximum term of more than one year and the inmate has served at least one year of each sentence. Thus there are two distinct questions to be resolved. First, whether sentence aggregation is available under any circumstances to county inmates, and second, if so, in what fashion.
We conclude that sentence aggregation is available to county inmates under N.J.S.A. 30:4-123.10 and 30:4-123.35. Two observations support this view. First, it is of the greatest significance that neither of the relevant statutory provisions contains express language denying sentence aggregation to county inmates. The statutes are silent on this point. A denial of sentence aggregation from such silence is unwarranted, especially when to do so would threaten the *293 validity of the statute. Interpretations which lead to absurd or unreasonable results are to be avoided. State v. Gill, 47 N.J. 441 (1966); Libby v. Union Cty. Bd. of Freeholders, 125 N.J. Super. 471 (App. Div. 1973). We attach no significance to the fact that N.J.S.A. 30:4-123.10 describes the application of the aggregation techniques to sentences of minimum and maximum terms, which sentences are only to the State Prison under N.J.S.A. 2A:164-17. We concur with the advisory opinion of the Attorney General that the fixed term of a sentence to a county institution is to be construed as both a minimum and a maximum for purposes of aggregation, a practice observed under other, albeit unusual, circumstances in State v. Roleson, 25 N.J. Super. 461 (App. Div. 1953), aff'd 14 N.J. 403 (1954), cert. den. 347 U.S. 947, 74 S.Ct. 647, 98 L.Ed. 1095 (1954).
A proper understanding of the manner in which sentence aggregation applies to inmates of county institutions requires that N.J.S.A. 30:4-123.10 and 30:4-123.35 be construed in relation to each other. The first section, N.J.S.A. 30: 4-123.10, provides in part:
No inmate of a penal or correctional institution serving a sentence for a fixed minimum and maximum term shall be eligible for consideration for release on parole until he has served his minimum sentence or 1/3 of his fixed maximum sentence * * *.
Paragraph 2 of this provision provides the method for determination of the date at which an inmate, serving consecutive sentences imposed by the same court at the same time, shall become eligible for parole consideration. Such sentences are deemed a single sentence, the minimum of which shall be the sum of the minimum terms of each sentence imposed, the maximum the sum of the maximum terms of each sentence.
The third paragraph provides a similar aggregation procedure where consecutive sentences have been imposed by different courts at different times, with two significant variations. *294 In these cases aggregation is at the discretion of the Parole Board and requires the consent of the inmate.
N.J.S.A. 30:4-123.35 provides, in relevant part:
* * * [A]ny prisoner in a county penitentiary serving a term having a maximum greater than a year and who has served at least 1 year of such term shall be permitted to make application for parole. * * *
As noted above, the Attorney General has maintained that this language requires that the county inmate, unlike one confined to State Prison, must serve at least one year of each of the consecutive sentences before sentence aggregation may be used. We disagree. It is axiomatic that the meaning of a particular phrase or provision of a statute is to be determined in the context of the whole statute. See Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287 (1949); Petition of Sheffield Farms Co., 22 N.J. 548 (1956); Seatrain Lines v. Medina, 39 N.J. 222 (1963).
N.J.S.A. 30:4-123.35 is concerned with the parole eligibility of county inmates serving a single sentence. In its limited scope it may be viewed as parallel to the first paragraph of N.J.S.A. 30:4-123.10, quoted above, which is also concerned only with inmates serving a single sentence. It is therefore inappropriate to give too much weight to N.J.S.A. 30:4-123.35 in construing those paragraphs of N.J.S.A. 30: 4-123.10 which concern the aggregation of consecutive sentences.
The extent to which N.J.S.A. 30:4-123.35 should apply to the aggregation procedures of N.J.S.A. 30:4-123.10 to county inmates is best determined by reference to the clear intent of the Legislature in providing parole for county inmates. Two limitations are apparent in the language quoted above. The Legislature intended that no county prisoner should be eligible for parole until he has been incarcerated for at least one year. Additionally, the greater than one-year sentence requirement limits parole eligibility only to those inmates whose sentences might have been served in *295 State Prison. We agree with the view taken by the Attorney General in the advisory opinion cited above that the Legislature did not intend to make parole available to county inmates serving disorderly person sentences of six months, even where several such consecutive sentences have been imposed.
Consistent with the above analysis of N.J.S.A. 30:4-123.10 and 30:4-123.35, we conclude that inmates of county institutions sentenced to consecutive sentences where each sentence has a term of at least one year shall be eligible to apply for parole upon completion of the aggregated minimum sentence or one-third of the aggregated maximum term. In no case shall parole eligibility arise until the inmate has served at least one full year.
Computation of the aggregated sentence shall be according to N.J.S.A. 30:4-123.10, with the fixed term of the county sentence to be considered as both a minimum and maximum term. In the present case the prisoner was sentenced to consecutive terms of 12 and 18 months. His aggregated term, both minimum and maximum, is 30 months. We recognize that a State Prison inmate with an aggregated maximum sentence of 30 months would be eligible for parole at a marginally earlier time than a similarly sentenced county inmate  ten months as opposed to one year. This result is dictated by the clear requirement of N.J.S.A. 30:4-123.35 that county inmates serve at least one year before applying for parole.
Finally, it should be noted that the prisoner here is not automatically entitled to the benefit of sentence aggregation. Since his consecutive sentences were imposed by different courts at different times, he is subject to the third paragraph of N.J.S.A. 30:4-123.10 which makes the application of sentence aggregation at the discretion of the Parole Board.
The matter is therefore remanded to the Parole Board for a prompt determination as to whether the prisoner's consecutive sentences are to be aggregated. Such determination must, of course, be made according to the same *296 standards applicable to similarly situated State Prison inmates. If that decision is favorable to the prisoner, he is entitled to make immediate application for parole pursuant to N.J.S.A. 30:4-123.35 since he has already completed one year of his term. If the Board's decision as to aggregation is unfavorable, the prisoner shall, in any case, be eligible to apply for parole upon completion of one year of the 18-month sentence to the Mercer County Correctional Center.