126 N.J. Super. 538 (1974)
315 A.2d 720
LEOPOLDO BONILLA, APPELLANT,
v.
NICHOLAS D. HEIL, CHAIRMAN NEW JERSEY STATE PAROLE BOARD, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1973.
Decided February 14, 1974.
*539 Before Judges HANDLER, MEANOR and KOLE.
*540 Mr. Gerald D. Miller argued the cause for appellant (Messrs. Miller, Hochman, Meyerson and Miller, attorneys).
Mr. Robert E. Popkin, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by MEANOR, J.A.D.
Following pleas of guilty, Leopoldo Bonilla was, on May 3, 1973, sentenced to concurrent terms of 12 months in the Hudson County Penitentiary for atrocious assault and battery, N.J.S.A. 2A:90-1, and possession of a dangerous weapon, N.J.S.A. 2A:151-41.[1] His attorneys requested the State Parole Board to consider Mr. Bonilla for parole upon the expiration of one-third of his sentence. The Parole Board declined the request by letter dated July 9, 1973 on the ground that a county penitentiary inmate under a 12-month sentence is not eligible for parole. Conceiving this denial to be final state agency action from which an appeal will lie, R. 2:2-3(a), Bonilla filed this appeal. The precise issue centers upon his contention that denial of parole eligibility to him as a county penitentiary inmate while extending parole to those confined within the state prison system constitutes a deprivation of equal protection.
New Jersey's system for incarceration and parole of the adult offender is an intricate one that has grown historically and not completely logically. A court about to sentence an adult convicted of crime  a misdemeanor or high misdemeanor and not a petty offense  may have alternatives.
A male defendant under age 30, not previously a state prison inmate, convicted of a crime punishable by a sentence to State Prison, may instead be sentenced to an indeterminate *541 term at the Youth Correctional Institution Complex. N.J.S.A. 30:4-147.[2] Parole from such sentences is under the control of the Board of Trustees of that institution, N.J.S.A. 30:4-148; 30:4-106; 30:4-1.1(n), and such release may occur at any time.
Adult female offenders may be sentenced to the Correctional Institution for Women if convicted of a crime for which a State Prison sentence could be imposed if the offender were male. N.J.S.A. 30:4-154. N.J.S.A. 30:4-155 requires that all sentences to the Correctional Institution for Women be for an indeterminate term except following convictions for murder or manslaughter, for which minimum and maximum terms are imposed as in the case of males. The statutory plan has been altered by State v. Chambers, 63 N.J. 287 (1973), in order to afford sentencing equality between men and women. By virtue of that decision, females age 30 and over must be given minimum-maximum terms if sentenced to the Correctional Institution for Women, and if under 30 the sentencing court must determine whether defendant, if male, would be given an indeterminate reformatory term or a minimum-maximum State prison sentence and enter judgment accordingly. Before State v. Chambers, supra, all parole from the Correctional Institution for Women, except for those sentenced for murder or manslaughter, rested with its Board of Trustees. N.J.S.A. 30:4-1.1(n). Parole power continues in the Board of Trustees as to indeterminate terms, but parole for all women sentenced to minimum-maximum terms now resides with the State Parole Board, N.J.S.A. 30:4-123.5. Parole of a female prisoner sentenced to an indeterminate term may take place at any time.
*542 All sentences, except for life, to the New Jersey State Prison must carry a minimum and a maximum term. The minimum must be at least one year and the maximum may not be in excess of the maximum prescribed by law for the offense in question. N.J.S.A. 2A:164-17. Parole for all prisoners, male and female, confined under minimum-maximum terms is within the jurisdiction of the State Parole Board. N.J.S.A. 30:4-123.5.
The earliest eligibility for parole by the State Parole Board occurs upon expiration of the minimum or one-third of the maximum sentence, whichever arrives first. These are adjusted terms, since work and good behavior credits are given thus enhancing parole eligibility. N.J.S.A. 30:4-123.10. This parole eligibility is available only to first offenders. Second offenders are not eligible until they have served an adjusted one-half of the maximum; third offenders must serve two-thirds of the maximum, and fourth offenders four-fifths before parole eligibility occurs. N.J.S.A. 30:4-123.12. Under this statute a multiple offender is one who has previously been sentenced and confined to a penal institution as defined therein as follows:
As used in this section "penal institution" means and includes the New Jersey State Prison and any other State penal or correctional institution in this State to which offenders are sentenced for fixed terms or fixed minimum and maximum terms and other institutions of like character under the jurisdiction of the United States or of a State or States other than this State.
The only "fixed term" sentence permitted within the state prison system is a life sentence. N.J.S.A. 2A:164-17. See State v. Hampton, 61 N.J. 250, 276 (1972).
New Jersey's penal system for adults also includes three different institutions under county aegis. These are jails, workhouses and penitentiaries. Each of the 21 counties has a jail. A few have workhouses. Essex and Hudson have no workhouses but are the only counties to have penitentiaries.
Sentences to these institutions are for a definite term without a minimum and maximum. N.J.S.A. 2A:164-15 requires *543 that all sentences for a term less than one year be to the county jail, workhouse or penitentiary. However, in first class counties (Essex, Hudson and Bergen), county jail sentences may not exceed six months.[3] In other counties, jail sentences must be for less than one year.
In counties having a penitentiary, sentences from one year to 18 months must be to that institution, unless the offender has previously served in State Prison in which event the court may choose the prison rather than the county penitentiary. Eighteen months is the maximum sentence permitted to a county penitentiary. N.J.S.A. 2A:164-15.
The maximum workhouse sentence is 18 months. The sentencing court, in its discretion, may utilize the county workhouse as a place of confinement rather than State Prison. N.J.S.A. 2A:164-15.
A sentencing technique, unique to county institutions, N.J.S.A. 2A:164-16, is the split sentence. The court may require that a portion of the sentence be served in custody, and the balance on probation. Any available work and behavior credits are granted against the custodial portion of the sentence.
Sentence credit for good behavior in the State Prison is governed by the schedule contained in N.J.S.A. 30:4-140. By its terms this statute also governs in the case of all females sentenced to minimum-maximum terms. Good behavior credit for county jail and penitentiary inmates is controlled by N.J.S.A. 2A:164-24. It will be noted that slightly greater credits for proper deportment are granted within the state prison system. Strangely, our statutes contain no provision for the grant of deportment credits to those confined in county workhouses.
*544 Work credits are available in all institutions. On the state level the governing statute is N.J.S.A. 30:4-92, and as to all county penal institutions see N.J.S.A. 30:8-28.1. With the exception of additional credits that may be earned by trustworthy inmates confined to minimum security institutions on the state level, the work credits provided by these two statutes are identical.
Work release programs are provided for inmates on both state and county levels. State work release is provided for in N.J.S.A. 30:4-91.1 et seq. Work release from all county penal institutions is covered by N.J.S.A. 30:8-44 et seq. The inmate remains confined except for the hours of employment. N.J.S.A. 30:8-48.
There are two statutory provisions dealing with parole from county penal institutions. N.J.S.A. 30:4-123.35, the statute under which appellant applied, governs parole from a county penitentiary. It grants to a county penitentiary inmate sentenced to more than a year the right to apply to the State Parole Board for parole after serving one year of his or her sentence. If parole is granted, supervision is by the county probation department. There is no provision granting any parole eligibility to a county workhouse inmate.
The only other statutory mention of parole from a county penal institution is contained in N.J.S.A. 30:8-28. This is part of a scheme for the employment of county jail prisoners set forth in N.J.S.A. 30:8-25 to 28. These statutes derive from L. 1917, c. 271, which is entitled "An Act to provide for the employment of inmates of county jails, and to provide payments therefor." It is apparent from a reading of this act that the parole provided for by N.J.S.A. 30:8-28 was parole for the purpose of prisoner employment. This statute permits a county court, in its discretion and upon recommendation of the sheriff, to parole a county jail prisoner to the custody of the county probation officer "or any other fit person." This statute cannot be read in isolation, and the entire act limits the parole power granted as one to be exercised only in the event of outside prisoner employment, *545 with his wages being paid not to the prisoner but to the parole agent to be disbursed by him for the benefit of the prisoner and his dependents. This act is a holdover from the discredited practice of farming out convict labor. It has been supplanted by the modern work release program to which we have referred above.
Utilization of N.J.S.A. 30:8-28 would raise a serious constitutional issue by providing parole for some but not all county inmates. We need not, however, pass upon the question whether N.J.S.A. 30:8-28 should be invalidated in the interest of sustaining the present parole system. In May 1963 a directive was issued by the Chief Justice ordering that county judges refuse to entertain applications under N.J.S.A. 30:8-28. This directive is published as Item 14, April 1965 Summary of Administrative Directives, issued by the Administrative Director of the Courts. Thus, we may disregard N.J.S.A. 30:8-28 and any potential impact its vitality might have upon the validity of New Jersey's present parole plan.[4]
The State challenges the standing of appellant to assert the issues he brings here. The argument is founded upon the thought that since Bonilla is in no way affected by the affirmative action of the parole statutes, he may not challenge their validity. However, the relief sought is not invalidation of the parole system, but its expansion to cover him. He says, in effect, that he has been unconstitutionally excluded from its operation.
We think Bonilla has standing to assert the issue that he has been unconstitutionally excluded from the class of New Jersey prisoners granted parole eligibility. Elsewhere equal protection attacks have been heard by one contending that there was arbitrary exclusion from the statutorily affected *546 class. Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949). See also, Nelson v. So. Brunswick Planning Board, 84 N.J. Super. 265, 276-277 (App. Div. 1964).
Gone are the days when claims of invidious discrimination in the parole process could be given the short answer that parole is but an act of grace on the part of the State. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 4, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). See also, Monks v. N.J. State Parole Board, 58 N.J. 238 (1971), and Beckworth v. N.J. State Parole Bd., 62 N.J. 348 (1973).
Classification of prisoners for parole eligibility purposes is not inherently suspect like classifications based on race (Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)), on alienage (In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973)), or perhaps on sex (Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973)). McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). Therefore, such classifications "require only some rational basis to sustain them." McGinnis, supra, 410 U.S. at 270, 93 S.Ct. at 1059, and cases therein cited.[5] Thus, we must examine our parole eligibility classifications to see if the various categories *547 into which prisoners are cast for such eligibility are founded upon some rational basis.
From the description we have set forth earlier it can be seen that New Jersey has divided its offenders into different classes, affording no parole eligibility to some and differing parole to others. The classification falls into the following categories:
1. Criminal offenders sentenced to the State Prison or to the Correctional Institution for Women under minimum-maximum terms. The minimum must be at least one year and the maximum may be no more than the maximum provided for the offense in question. Parole eligibility for a first offender arises upon the completion of the minimum term or one-third of the maximum, whichever occurs first, and both terms for parole purposes are adjusted to reflect deportment and work credits. Subsequent offenders achieve parole eligibility following completion of adjusted larger fractions of their maximum terms, as we have set forth above in our discussion of N.J.S.A. 30:4-123.10. Parole of this class of prisoners is controlled by the State Parole Board.
2. Criminal offenders given indeterminate terms. By statute indeterminate terms can only be given to males under 30 who have not previously been confined under a minimum-maximum term and must be given all women, except those convicted of murder or manslaughter. We have previously set forth the change in female sentencing required by State v. Chambers, supra.[6] Parole of this class of offenders is vested in the Board of Trustees of the institution to which confined, and parole eligibility arises immediately upon arrival there.[7]
*548 3. Criminal offenders sentenced to county penitentiaries for a term in excess of one year. These inmates may apply to the State Parole Board for parole after serving one year of their term. We construe the word "year" set forth in N.J.S.A. 30:4-123.35 to mean a calendar year adjusted by any available and earned deportment and work credits, to the end that one sentenced to a county penitentiary for more than a year shall be eligible for parole release at the same time he would be released if sentenced to a year.
4. Criminal offenders sentenced to a county workhouse for a term greater than a year. These inmates have no parole eligibility, nor is there any specific statutory provision for providing them with deportment credits.[8]
5. Criminal offenders confined in county penitentiaries, jails and workhouses for terms of a year or less and petty offenders confined in the same institutions under terms of six *549 months or less.[9] These prisoners have no parole eligibility, save for county jail inmates under N.J.S.A. 30:8-28, which should not be used. All institutions may afford work credits, and county jails and penitentiaries have specific authority under N.J.S.A. 2A:164-24 to afford good conduct remission from sentence. As pointed out above, there is no specific statutory authority for good conduct credit for workhouse inmates, but, nonetheless, such credit apparently is now being given in the workhouses of Mercer and Middlesex Counties
Aside from the denial of parole eligibility to any workhouse inmate, a circumstance that is not now here for resolution, it can be seen that a legislative line has been drawn at one year for parole eligibility purposes for prisoners sentenced to fixed or minimum-maximum and not indeterminate terms. County jail prisoners obtain no parole because all county jail sentences are less than a year.[10] All those sentenced to minimum-maximum terms are eligible for parole consideration, but on such sentences the minimum must be at least one year and the maximum may be as high as the maximum prescribed for the offense in question.[11] County penitentiary *550 inmates are eligible to apply to the State Parole Board for parole where they are sentenced to more than a year and have served an adjusted year of their term.
We see nothing invalid in the determination that parole eligibility shall arise only with respect to sentences greater than one year. That a line between eligibility and non-eligibility must be drawn somewhere is a judgment with which there can be no constitutional quarrel. A parolee cannot be kept on parole longer than his maximum term, although he may be released from parole at an earlier date. N.J.S.A. 30:4-123.15; N.J.S.A. 30:4-123.30. These statutes require that one released on parole who has less than two years remaining toward completion of his maximum term must be discharged from parole at the expiration of his maximum, but one who has more than two years remaining until completion of the maximum term may not be discharged from parole until he has completed two years of satisfactory parole adjustment. This indicates a judgment, surely a valid one, that short-term parole supervision is apt to be inefficacious. In this light, the administrative burden of supervising large numbers of short term parolees may be considered.[12] Therefore, the thesis that on short sentences confinement and unconditional release should be the plan rather than an inefficient short parole has reasonable basis and no discriminatory class is created.
Drawing the line at one year in some instances may result in the anomaly of release on parole for a State Prison inmate earlier than discharge or parole release of one imprisoned in a county penitentiary. However, if a line is to be drawn, *551 no matter where it is placed, such discrepancies cannot be avoided. We should add, too, that parole is a form of limited custody and a parolee is by no means as free as one released unconditionally. In short, we find the one-year line to be valid, although it does result in some surface discrimination which would be difficult, if not impossible, to avoid. The Constitution does not ban all discrimination, but only that which is unreasonable. The rationale behind the one-year criterion of parole eligibility passes constitutional muster.
We also believe that there are valid reasons for determining that a county penitentiary inmate shall have parole eligibility that arises later than such eligibility for a State Prison inmate sentenced to a comparable or slightly greater term. There are advantages to being sentenced to the county penitentiary rather than the State Prison. It is a fair assumption that most county inmates formerly resided and worked in a geographical area proximate to the place of their confinement. A county prisoner may qualify for a work release program that will enable him to retain previous local employment while serving his sentence. Most important is that a sentence to a county institution does not constitute a prior offense under N.J.S.A. 30:4-123.12. Thus, one previously sentenced to a county institution under circumstances where a State Prison sentence could have been given, upon a subsequent sentence to the latter institution, may still qualify for parole release as a first offender. A county institutional sentence does not bear the stigma of incarceration in State Prison and does not subject one to the necessity of serving with hardened criminals under long-term confinement. We point out, too, that if a split sentence pursuant to N.J.S.A. 2A:164-16 is imposed upon sentence to a county institution, parole is obviously inapplicable. We cannot say that to apply different parole eligibility criteria to county and state prisoners is an arbitrary or unreasonable judgment.
It is our conclusion, therefore, that the statutory parole scheme which creates eligibility for parole consideration only for those sentenced to more than one year and denies *552 parole to those sentenced to a year or less does not unconstitutionally discriminate against inmates under sentence of a year or less. It is also held that the different time requirements for parole eligibility between county and State prisoners is justified.
Affirmed.
NOTES
[1] State Prison sentences could have been given instead. Both statutes define high misdemeanors for which the maximum penalty is seven years. N.J.S.A. 2A:85-6.
[2] The statute has not been construed literally. One previously given a suspended State Prison sentence may later be sentenced to a reformatory term. Thus, it is necessary that there be actual confinement under a minimum-maximum term in order to preclude later reformatory confinement. State v. Pallitto, 107 N.J. Super. 96 (App. Div. 1969), certif. den. 55 N.J. 309 (1970).
[3] Our inquiry to the Department of Institutions and Agencies brought forth the statement that Mercer and Middlesex Counties have workhouses and that Bergen has a jail annex which is considered a workhouse. We understand that the practice in Bergen County is to sentence to county institutions only for terms less than one year.
[4] Our description of New Jersey's penal and parole system is, we think, sufficient for present purposes. It is, however, more intricate and detailed, and to describe it in full here would be neither possible nor pertinent.
[5] McGinnis upheld denial of good deportment credit for presentence jail time which was required to be credited against the sentence eventually imposed. In New Jersey the same situation exists as to State Prison sentences. Everyone sentenced in New Jersey is as of right given credit for time spent in custody awaiting trial and sentence. R. 3:21-8; R. 7:4-6(e). N.J.S.A. 30:4-140 forbids granting good behavior commutation credit on presentence time spent in custody. In McGinnis the constitutional challenge was predicated upon the proposition that denial of commutation credit on presentence jail time discriminated against those unable to make bail since those not in custody until sentence received such credits against their entire term, while those in jail prior to sentence obtained credit only on a reduced portion of the sentence given. The McGinnis result was anticipated in New Jersey by Torres v. Wagner, 121 N.J. Super. 457 (App. Div. 1972), and Lipschitz v. State, 43 N.J. Super. 522 (App. Div. 1957).
[6] Although it is not expressly set forth either in that case or in any statute, we think it doubtful that, henceforth, a court can sentence a female to an indeterminate term who has previously been confined under a minimum-maximum sentence.
[7] In the indeterminate sentence the understood maximum is five years, and it is on this basis that a right to release will accrue, in the absence of parole, after remission for earned credits. N.J.S.A. 30:4-148; N.J.S.A. 30:4-155. Under these statutes the maximum term for both men and women under an indeterminate sentence will not be five years in only two instances. First, if the offense for which sentenced carries a lesser maximum, that lesser term will control. Second, the five-year maximum will not apply if the offense for which sentenced carries a higher maximum and the court at the time of sentence "for good cause shown" imposes a higher maximum than five years, but in no event for a greater amount of years than the maximum provided by law for punishment for the offense in question. Courts have no power to reduce the statutorily prescribed maximums on indeterminate sentences. In re Nicholson, 69 N.J. Super. 230 (App. Div. 1961).
[8] It appears that workhouse inmates in Mercer and Middlesex Counties are being given deportment credits in accord with N.J.S.A. 2A:164-24, which specifically provides for good conduct remission from sentence only for prisoners in county jails and penitentiaries. It seems to us that a denial of good conduct remission to workhouse inmates while extending it to other county prisoners raises a serious equal protection issue which, however, this record does not present for decision.

Another such issue, also not available on this record, is the denial of any parole eligibility to workhouse inmates sentenced to more than a year while extending it to similarly sentenced county penitentiary prisoners.
[9] The maximum petty offense (disorderly persons) penalty is six months' imprisonment "in the county workhouse, penitentiary or jail." N.J.S.A. 2A:169-4. Most of our criminal statutes define misdemeanors, maximum punishment three years' imprisonment, N.J.S.A. 2A:85-7, or high misdemeanors, maximum punishment seven years. N.J.S.A. 2A:85-6. In addition, many statutes carry their own penalties ranging from small fines to long imprisonment terms.
[10] We have already eliminated the complicating factor of parole for county jail inmates under N.J.S.A. 30:8-28 by ruling above that that statute should not be used.
[11] We think we may put aside the unusual situation exemplified by State v. Roleson, 14 N.J. 403 (1954), cert. den. 347 U.S. 947, 74 S.Ct. 647, 98 L.Ed. 1095 (1954), where a State Prison sentence may carry a minimum and maximum, both of one year, as too infrequent an occurrence to have an impact upon the validity of the parole system.
[12] Short maximum sentences within the state prison system often create an emergency case for the Parole Board, particularly if the prisoner is entitled to presentence jail credit, since under such circumstances the inmate's parole eligibility date may arise shortly after his arrival. Under such circumstances serious consideration should be given to the alternative of confinement in a county institution.