621 A.2d 1

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DWIGHT ROBERT BRIDGES, DEFENDANT–
APPELLANT.

Argued October 27, 1992—Decided February 25, 1993.

*Merrill N. Rubin* argued the cause for appellant (*Easter and Rubin,* attorneys).

*Nancy Peremes Barton,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

Pursuant to a negotiated plea under *N.J.S.A.* 2C:35–12 ("section 12"), defendant pleaded guilty to the possession of cocaine with intent to distribute within 1,000 feet of school property in violation of *N.J.S.A.* 2C:35–7 ("section 7"). In exchange for the plea, the State agreed, pursuant to section 12, to waive the mandatory-minimum period of parole ineligibility and to recommend that defendant be given a split sentence, "probation with 364 days in the county jail." The narrow issue is whether the court has the discretion under section 12 to reduce the custodial part of the plea agreement.

The trial court determined that based on a review of the legislative history of section 12, "it does not have discretion to deviate from [the plea] agreement unless the agreement were to be, of course, rejected in its entirety." The court, "feel[ing] bound by *N.J.S.A.* 2C:35–12," sentenced defendant to a two-year term of probation conditioned on 364 days in the Hunterdon County Jail.

The Appellate Division affirmed, concluding that under section 12 the sentencing court had no discretion, once it had accepted the plea agreement, to sentence below the "term of imprisonment" recommended by the State. 252 *N.J.Super.* 286, 295, 599 *A.*2d 919 (1991). The court reasoned that because imprisonment as a condition of probation is a "term of imprisonment," section 12 precludes the sentencing court from imposing a lesser term of imprisonment than that specified in the agreement. *Id.* at 294, 599 *A.*2d 919. We granted defendant's petition for certification. 130 *N.J.* 8, 611 *A.*2d 648 (1992). As did the lower courts, we conclude that "term of imprisonment" encompasses the custodial aspect of defendant's split sentence. We hold, therefore, that the trial court had no authority to sentence defendant below the agreed-upon 364 days.

I

As part of the Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35–1 to –23, (the "Drug Reform Act"), section 7

directs that any person found guilty of third-degree distribution of cocaine within 1,000 feet of school property "shall, except as provided in *N.J.S.A.* 2C:35–12, be sentenced by the court to a term of imprisonment * * * [and] the term of imprisonment shall include the imposition of a minimum term which shall be fixed at * * * three years." Section 12 provides that on a defendant's conviction for an offense proscribed by Chapter 35, the sentencing court shall impose the mandatory sentence

unless the defendant has pleaded guilty pursuant to a negotiated agreement * * * which provides for a lesser sentence or period of parole ineligibility. The negotiated plea * * * may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, *or other disposition.* In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement. (emphasis added).

Defendant contends that a sentence of probation is an "other disposition." Because the phrase "other disposition" is absent from the last sentence of section 12, defendant claims that under the plain language of the statute, the court is not bound to impose the prosecutor's recommended sentence.

## II

We first consider the plain language of section 12, for if the statute "is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than [its] literal terms to divine the Legislature's intent." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982).

Section 12 states that the agreement may provide for (1) a specified term of imprisonment within the range of ordinary or extended sentences authorized by law; (2) a period of parole ineligibility; (3) a fine; or (4) other disposition. Clearly, defendant's sentence of probation conditioned on 364 days in county jail provides for neither a fine nor for a period of parole ineligibility. In addition, because defendant's sentence calls only for 364 days in county jail, it does not fit squarely within the range of ordinary or extended sentences authorized by law

for a school-zone offense. The range of an "ordinary" term of imprisonment "authorized by law" for a school-zone offense, a third-degree crime, is three to five years. *N.J.S.A.* 2C:43–6a(3). The range set forth for an "extended" term is five to ten years. *N.J.S.A.* 2C:43–7a(4).

The language of section 12, therefore, appears to provide unambiguously that the phrase "other disposition" means all sentencing options other than a term of imprisonment within the range of ordinary and extended sentences authorized by law, a period of parole ineligibility, or a fine. The statute's plain language, therefore, supports an interpretation that defendant's sentence of probation conditioned on 364 days in the county jail is an "other disposition." Resolution of this appeal, however, does not turn on the meaning of "other disposition" within the meaning of section 12. Rather, the issue for resolution is whether the custodial aspect of that "other disposition", a split sentence, constitutes a "term of imprisonment" as that phrase is used in the last sentence of section 12. That sentence states that in the event of a negotiated-plea agreement or post-conviction agreement, the sentencing court "shall not impose a lesser *term of imprisonment*, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement." (emphasis added).

We construe section 12 strictly because it is a penal statute. *State v. Vasquez*, 129 *N.J.* 189, 200, 609 *A.*2d 29 (1992). The rule of strict construction, however, "'does not prevent a court ... from giving effect to the terms of the statute in accordance with their fair and natural acceptance.'" *State v. Ivory*, 124 *N.J.* 582, 594, 592 *A.*2d 205 (1991) (quoting *State v. Meinken*, 10 *N.J.* 348, 352, 91 *A.*2d 721 (1952)). The "'words of [a penal statute] are to be accorded a rational meaning in harmony with the obvious intent and purpose of the law.'" *State v. Tischio*, 107 *N.J.* 504, 511, 527 *A.*2d 388 (1987) (quoting *State v. Brown*, 22 *N.J.* 405, 415, 126 *A.*2d 161 (1956)),

*appeal dismissed,* 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988).

The State argues that the phrase "term of imprisonment" means *any imprisonment* prescribed by the Code of Criminal Justice ("Code"), including the custodial aspect of defendant's "split sentence," as provided for in *N.J.S.A.* 2C:43–2b(2). Defendant, on the other hand, asserts that "term of imprisonment" within the meaning of section 12 refers only to imprisonment "within the range of ordinary or extended sentences authorized by law." Defendant maintains that because his sentence does not fit squarely within that range, the sentencing court should not be bound by section 12's restrictive language.

### III

When a statutory term is subject to more than one interpretation, we look beyond its plain language to determine the Legislature's intent. Our inquiry into the legislative history and special purpose of section 12 supports a construction of the phrase "term of imprisonment" to include the custodial part of defendant's split-sentence.

In enacting the Drug Reform Act, the Legislature declared the public policy of the State to be "to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders." *N.J.S.A.* 2C:35–1.1c. Toward that end, the Legislature recognized the need for adequate sentencing guidelines to identify consistently the most serious offenders and to guard against sentencing disparity, which diminishes the deterrent thrust of the criminal law. *N.J.S.A.* 2C:35–1.1d. The Legislature made sweeping revisions to the predecessor law contained in the Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 to –53 in an attempt to effectuate that policy. To promote uniform sentences, the Legislature ordered the transfer of drug offenses from the Controlled Dangerous Substances Act to the Code:

The consolidation of these offenses and provisions into the penal code will limit courts' sentencing discretion, and will ensure more uniform, consistent and predictable sentencing practices. In contrast to New Jersey's current drug laws, the penal code establishes degrees of offenses and provides definitive sentencing ranges and presumptive terms for each degree. This bill clearly establishes the degree and severity of every drug offense, taking into account the nature and dangerousness of the specific controlled substance involved, the amount and purity of that substance, and the defendant's role in the drug distribution hierarchy.

[*Assembly Judiciary Committee Statement, No. A. 3270* 1 (Dec. 18, 1986) (*Committee Statement*).]

To provide for strict penalties, the Drug Reform Act mandates a mandatory-minimum sentence for certain drug offenses occurring in a designated school zone. Section 7 provides that any person who violates *N.J.S.A.* 2C:35–5 while within 1,000 feet of a school or school bus shall be sentenced to a minimum term of three years imprisonment, during which the defendant shall be ineligible for parole.

The Legislature, however, tempered its professed goal of strict punishment and sentence uniformity by authorizing the prosecutor to waive the mandatory minimum prison term in section 12. *See State v. Vasquez, supra,* 129 *N.J.* at 204, 609 *A.*2d 29. In so doing, the Legislature recognized the need to secure the cooperation of lower- and middle-level drug offenders with law enforcement in order to penetrate the drug-trafficking hierarchy:

[O]ne of the key objectives of [section 12] and of the act is to provide persons engaged in illicit drug activities with strong incentives to cooperate with law enforcement to overcome the perceived and substantial risks associated with turning State's evidence and exposing their superiors, suppliers and affiliates.

[*Official Commentary to the Comprehensive Drug Reform Act* (Laws 1987, Chapter 106), *reprinted in* 9 *Crim.Just.Q.* 149, 161 (1987) (*Commentary*).]

The contemporaneous expression of legislative understanding is entitled to considerable weight in ascertaining the intent of the Legislature. *State v. Hammond,* 118 *N.J.* 306, 312, 571 *A.*2d 942 (1990); *N.J. Pharmaceutical Ass'n v. Furman,* 33 *N.J.* 121, 130, 162 *A.*2d 839 (1960). The *Committee Statement* and *Commentary* suggest that the sentencing court has no discretion to lower the custodial part of a section 12 plea

agreement; instead, they evince a clear legislative intent "to limit courts' sentencing discretion, and [to] ensure more uniform, consistent and predictable sentencing practices." *Committee Statement, supra,* at 1. More particularly, neither the *Committee Statement* nor the *Commentary* reveals any legislative intent to support defendant's assertion that section 12 confers on a court the discretion to sentence below the agreed-upon term of imprisonment in a negotiated guilty plea. To the contrary, the *Commentary* states clearly that section 12 "expressly precludes" a sentencing court from imposing a "lesser *prison term* or fine than that expressly mandated by a plea agreement." *Commentary, supra,* 9 *Crim.Just.Q.* at 161 (emphasis added). The *Commentary* explains that the Legislature chose to limit a court's exercise of discretion under a section 12 plea agreement to only two circumstances: (1) when the court finds that the "interests of justice" would not be served by effectuating that agreement, it has the discretion to reject a plea in its entirety, *R.* 3:9–3; and (2) when the plea agreement remains silent concerning any or all terms, the court retains discretion to impose any sentence deemed appropriate, within the requirements of the Act. Once a court accepts a negotiated guilty plea, however, it is "bound by the specific terms and conditions of that negotiated agreement" for the purpose of imposing sentence. *Commentary, supra,* 9 *Crim.Just.Q.* at 161.

According to the Code's own rules of construction, "when the language [of a provision] is susceptible of differing constructions it shall be interpreted to further the general purposes stated in [section 2C:1–2] and the special purposes of the particular provision involved." *N.J.S.A.* 2C:1–2c. As noted, one of the Legislature's primary objectives in drafting section 12 was "to provide persons engaged in illicit drug activities with strong incentives to cooperate with law enforcement" to apprehend and prosecute the "more culpable, higher echelon members" of a drug-distribution network. *Commentary, supra,* 9 *Crim.Just.Q.* at 161. Section 12 encourages such coop-

eration by insuring that the State, as well as the defendant, receives the full benefit of a negotiated agreement. *Committee Statement, supra,* at 3. To allow a court to sentence below the prison term provided in the plea agreement undermines the clear legislative purpose expressed in section 12. Prosecutors would understandably be reluctant to enter into a section 12 plea agreement knowing that in addition to the waiver of the mandatory-minimum parole disqualifier, the defendant could receive only a fraction of the bargained-for time of incarceration. To promote cooperation between drug offenders and law enforcement, therefore, section 12 must be read to limit a court's discretion to sentence below the agreed-upon term of imprisonment.

Moreover, the construction of "term of imprisonment" to include only "a specified term of imprisonment within the range of ordinary or extended sentences authorized by law" would create an inconsistency in the operation of section 12. The *Commentary* clearly states that section 12 prohibits the reduction of all specified fines *and* prison terms. *Commentary, supra,* 9 *Crim.Just.Q.* at 161. Defendant, however, advocates a disparate treatment of those sentences. His proffered construction of section 12 prohibits the sentencing court from reducing a fine specified in the plea agreement, yet it allows the court to sentence below the specified term of incarceration in a plea agreement's recommended split sentence. That disparity conflicts with a general purpose of the Code to promote uniformity and to reduce disparity in sentencing. *See N.J.S.A.* 2C:1–2b(4), (6); *State v. Lee,* 235 *N.J.Super.* 410, 413, 563 *A.*2d 51 (App.Div.1989). More fundamentally, the disparity frustrates two expressed policies of the Drug Reform Act: (1) to secure the cooperation of defendants, and (2) to promote uniform and consistent sentences.

That construction of "term of imprisonment" is reinforced by the absence of any restrictive language in section 12 qualifying the duration or type of imprisonment. Moreover, the Legislature's consistent use of the phrase "term of imprisonment" to

characterize the custodial aspect of a split sentence provides further support for that interpretation. *N.J.S.A.* 2C:43–2b(2), authorizing the imposition of split sentences, provides that "except as otherwise provided by this code," the court may sentence a person convicted of an offense to "probation, and in the case of a person convicted of a crime, to *imprisonment for a term* \* \* \* not exceeding 364 days to be served as a condition of probation." (emphasis added). In addition, *N.J.S.A.* 2C:45–1d provides: "[w]hen the court sentences a person who has been convicted of a crime to be placed on probation, it may require him to serve a *term of imprisonment* not exceeding 364 days as an additional condition of its order." (emphasis added).

Considering the statutory phrase in the context of the entire section and in a manner that advances the statute's legislative purposes, we find that the phrase "term of imprisonment" in the last sentence of section 12 refers to defendant's prison term of 364 days in the county jail imposed pursuant to a section 12 negotiated plea agreement. As the commentary and legislative history bear out, the Legislature designed section 12 to enable the courts to ratify the terms of prosecutorial bargains with defendants in an effort to promote cooperation. A narrow construction of "term of imprisonment" gives prosecutors little incentive to bargain with defendants, thereby defeating an express purpose of section 12.

IV

Defendant contends that that interpretation ignores the distinction established in *State v. Hartye,* 105 *N.J.* 411, 522 *A.*2d 418 (1987), and its companion case of *State v. O'Connor,* 105 *N.J.* 399, 522 *A.*2d 423 (1987), between a term of imprisonment imposed as a condition of probation and a sentence of imprisonment. In those cases, the Court noted that a term of imprisonment as a condition of probation must be served in a county jail, while generally a sentence of imprisonment must be served in a state correctional facility. *Hartye, supra,* 105 *N.J.* at 419, 522

*A*.2d 418; *O'Connor, supra,* 105 *N.J.* at 409, 522 *A*.2d 423. Relying on that distinction, defendant argues that a sentencing court's discretion under Section 12 "is limited only when the plea agreement provides for a specific *prison term,* not a county jail sentence." In support of that argument the dissent states:

[The Legislature] enacted section 12 after we had decided *O'Connor* and *Hartye* * * *. We must assume that the Legislature was aware that a probationary county-jail term was not understood to mean a term of imprisonment as such. We must assume as well that it was conversant with the legal traditions and consistent penal practices that have uniformly recognized the . significance of the distinction between a state-prison term and a county-jail term that is imposed as a condition of probation. [*Post* at 419, 621 *A*.2d at 10.]

*Hartye* and *O'Connor,* however, must be considered in the context of the statutes they construe. Section 12 and these presumptions of imprisonment, *N.J.S.A.* 2C:44–1d and 1e, differ markedly in language and purpose. Each case considered the relationship between the presumptions of incarceration contained in *N.J.S.A.* 2C:44–1d and 1e and the sentence of probation conditioned on 364 days in the county jail, *N.J.S.A.* 2C:43–2b(2). In *O'Connor,* the Court concluded that a fifteen-weekend prison term, imposed as a condition of probation pursuant to *N.J.S.A.* 2C:43–2b(2), did not satisfy the presumption of incarceration that applied to a defendant who had pled guilty to a second-degree offense. 105 *N.J.* at 405, 522 *A*.2d 423. The Court reasoned that because the presumption of incarceration in *N.J.S.A.* 2C:44–1d severely limits a court's exercise of discretion in its decision to imprison first- and second-degree offenders, defendant's "split sentence" with a term of incarceration below the presumptive range for either a second- or third-degree offense was illegal. *Id.* at 407–08, 522 *A*.2d 423. The Court in *O'Connor* expressly rejected defendant's argument that the term "imprisonment" should have the same meaning throughout the Code's sentencing provisions. The Court held that to apply mechanically a rule of statutory construction in that case would "violate clear policies that form the foundation of the Code's sentencing provisions." *Id.* at 408, 522 *A*.2d 423.

The Court noted further that the Legislature intended that a "term of imprisonment" as a condition of probation under *N.J.S.A.* 2C:43–2b(2) and a sentence of imprisonment be treated as "two distinct and different sentencing alternatives." *Id.* at 409, 522 *A.*2d 423. In support of that conclusion, the Court quoted from the Final Report of the Criminal Law Revision Commission:

'[s]entences may be of four different sorts: * * * (2) to be placed on probation *with or without a short period of imprisonment;* or (3) to imprisonment for the term * * *.'

[*Ibid.* (quoting *II Final Report of the New Jersey Criminal Law Revision Commission: Commentary* 313 (1971)).]

The related issue addressed by the Court in *Hartye* was whether the presumption of non-imprisonment that applies to first time offenders convicted of third- or fourth-degree crimes precludes a court from imposing a jail term of up to 364 days as a condition of probation. The Court concluded that a term of imprisonment as a condition of probation is permissible where the presumption of non-imprisonment governs. 105 *N.J.* at 418, 522 *A.*2d 423. In so holding, the Court again expressly rejected the defendant's contention that the "term of imprisonment" as used in *N.J.S.A.* 2C:44–1e means any imprisonment. *Id.* at 418–19, 522 *A.*2d 423.

Given the policies underlying the Code and the express purpose of Section 12, our construction of the phrase "term of imprisonment" in Section 12 is consistent with our holdings in *Hartye* and *O'Connor.* There is no doubt, as the Court pointed out in those cases, that a term of imprisonment to be served as a condition of probation under *N.J.S.A.* 2C:43–2b(2) and a term of imprisonment under *N.J.S.A.* 2C:43–2b(3) are qualitatively and quantitatively different. Such a construction, however, was crucial to advance the Code's dual policies of greater uniformity and fairness in sentencing decisions. *O'Connor, supra,* 105 *N.J.* at 408, 522 *A.*2d 423. To construe the statute otherwise would have reintroduced unfettered discretion into sentencing decision. *Ibid.; see N.J.S.A.* 2C:1–2b.

Our construction of the phrase "term of imprisonment" advances the policy of Section 12 in much the same way that the statutory construction in *O'Connor* and *Hartye* promotes sentence uniformity. To construe section 12 using the *O'Connor* and *Hartye* distinction would permit the court to sentence a third-degree drug offender to probation with but one day in jail, thereby reintroducing unfettered discretion into sentencing decisions and circumventing the Legislature's intent for uniform and fair sentences.

Undoubtedly, the Legislature could better have used the phrase "a lesser term of incarceration" or "a lesser prison term." However, "[l]ack of precision in drafting does not mandate lack of common sense in construction." *State v. Des Marets*, 92 *N.J.* 62, 78, 455 *A*.2d 1074 (1983). When section 12 is read in conjunction with the rest of the Drug Reform Act and in light of the clear policies underlying the Code's sentencing provisions, common sense would suggest that the phrase "term of imprisonment" as used in section 12 includes defendant's 364–day term of imprisonment to be served as a condition of probation.

V

We therefore hold that the phrase "term of imprisonment" in section 12 includes a custodial term of 364 days in the county jail. Because the sentencing court has accepted the section 12 plea agreement, it is precluded from exercising its discretion to alter the terms of the prosecutor's recommended sentence.

The judgment of the Appellate Division is affirmed.

HANDLER, J., dissenting.

This case deals with the unique sentencing scheme applicable to school-zone drug offenses under *N.J.S.A.* 2C:35–12. The Court holds today that a county-jail sentence imposed pursuant to a negotiated plea as a condition of probation is not to be treated as a probationary sentence. Rather, it holds that such

a probationary jail sentence is simply a "term of imprisonment." As a result, although a sentencing court retains discretion under section 12 to modify a probationary sentence, it has no discretion to reduce the term of the county-jail sentence notwithstanding its imposition as a probationary condition. That result, I submit, is anomalous and not demanded by a sensible and unconstrained reading of the statute.

Section 12 anticipates the imposition of mandatory prison sentences with minimum terms of parole ineligibility for certain school-zone drug offenses. It provides that when such a mandatory sentence of imprisonment is specified, the court must impose that sentence "unless the defendant has pleaded guilty pursuant to a negotiated agreement." *N.J.S.A.* 2C:35–12. The statute also specifically provides:

> The negotiated plea or post-conviction agreement may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement. [*Ibid.*]

Thus, section 12 permits four possible sentencing alternatives as part of a negotiated plea. Those are "a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, or other disposition." *Ibid.* A so-called split sentence—that is, a county-jail term imposed as a condition of probation—cannot be categorized as any of the first three sentencing alternatives. It is not "a specified term of imprisonment within the range of ordinary or extended sentences"; it does not constitute a "period of parole ineligibility"; nor is it a "fine." It therefore is a sentence that falls within the catchall category, namely, "other disposition."

The Court in its opinion agrees with the conclusion that a probationary county-jail term is not an "ordinary" term of imprisonment. *Ante* at 406, 621 *A.*2d at 3. The statute's initial and basic reference to the phrase "term of imprisonment"

includes the qualification that it be "within the range of ordinary or extended sentences authorized by law." The Code meticulously prescribes the ranges of prison terms for particular offenses. *E.g., N.J.S.A.* 2C:43–6a(1) (range of term for first-degree crimes is ten to twenty years); *N.J.S.A.* 2C:43–6a(2) (range of term for second-degree crimes is five to ten years). Such terms, which involve more than one year in custody, must be served in state prison. *N.J.S.A.* 2C:43–10. A straight county-jail term—that is, one not split with a probationary sentence—would also constitute a term "within the range of ordinary ... sentences authorized by law." *E.g., N.J.S.A.* 2C:43–2b(3); *see State v. Hartye,* 105 *N.J.* 411, 522 *A.*2d 418 (1987); *State v. Kreidler,* 211 *N.J.Super.* 276, 511 *A.*2d 733 (App.Div.1986).

The prohibition of section 12 that restrains a court from sentencing a defendant to "a lesser term of imprisonment, period of parole ineligibility or fine" than that provided for by the negotiated plea agreement thus would not appear to apply to a probationary county-jail term. The prohibition repeats only the first three of the four plea bargain sentencing alternatives contemplated by section 12. The repetition of the phrase "term of imprisonment" in the prohibition against the modification of negotiated sentences would as a matter of linguistic similarity, proximity, syntax, and structure indicate that it is the *same* term of imprisonment referred to in the preceding section, which would authorize the plea negotiation of a state prison term or a straight non-probationary county-jail term. The proximity of these two lists of sentencing alternatives—one authorizing the plea negotiation of particular sentences, the other prohibiting changes with respect to all of those negotiated sentences except one—strongly, if not inescapably, implies that the exception was not an oversight. That exception, as noted, refers to sentences that constitute "other dispositions." Thus, the inference to be drawn from the statutory text is that the Legislature deliberately permitted a sentence that is an "other disposition" to be modified. Because a probationary

sentence with a county-jail sentence imposed as a probationary term is an "other disposition," the Legislature clearly intended to permit the judicial modification of such a sentence when it has been recommended by the prosecutor as part of the plea bargain.

In rejecting the common sense and logic of the statutory interpretation that recognizes a modicum of judicial discretion with respect to split-county jail terms, the Court follows a convoluted epistemological course. Although it acknowledges that the "term of imprisonment" that is authorized as a negotiated sentence under section 12 is qualified to mean only a state prison or straight county-jail term, the court disregards that express qualification when it assigns a meaning to "term of imprisonment" when next used four lines later in the statute. It thus discounts the parallel structure of the two provisions of section 12 and the obvious common meaning to be ascribed to the common phrase "term of imprisonment," used in both statutory passages.

The Court's understanding of "term of imprisonment" as used in the second part of section 12 would equate with a sentence that puts a defendant behind bars. Our penal laws have never adopted so broad and simplistic an understanding of what is meant by "term of imprisonment." In *State v. O'Connor*, 105 *N.J.* 399, 522 *A.*2d 423 (1987), and *Hartye, supra,* 105 *N.J.* at 411, 522 *A.*2d 418, the Court repeatedly and painstakingly explained the differences between a "sentence of imprisonment" and "imprisonment for a term as a condition of probation." A term of incarceration as a condition of probation must be served in a county jail, whereas a sentence of imprisonment is usually served in a state prison. *See Hartye, supra,* 105 *N.J.* at 419, 522 *A.*2d 418; *O'Connor, supra,* 105 *N.J.* at 409, 522 *A.*2d 423. Probationary incarceration must be no more than 364 days. *N.J.S.A.* 2C:43–2b(2); *see O'Connor, supra,* 105 *N.J.* at 409, 522 *A.*2d 423. A defendant sentenced to probationary incarceration may not be exposed to the parole-ineligibility term authorized by *N.J.S.A.* 2C:43–6b. *See Hartye, supra,* 105 *N.J.*

at 419, 522 *A*.2d 418. Unlike a state prison term, the custodial element of a probationary sentence may begin at any time during the probationary period and may be reduced any time before the probationary period has expired. *Ibid.*

Perhaps one of the most significant differences between a term of imprisonment and probationary incarceration is the nature of the correctional facility to which the defendant is sentenced: a county jail for the probationer and a state prison for the defendant sentenced under *N.J.S.A.* 2C:43–2b(3). In a pre-Code case, *Bonilla v. Heil,* 126 *N.J.Super.* 538, 315 *A.*2d 720 (App.Div.1974), the court held that denial of parole eligibility to an inmate of a county penitentiary, while extending parole to those confined in a state prison, did not deprive the county jail inmate of equal protection. The court found that there were valid reasons to provide later parole eligibility to a county inmate than to a state prison inmate with a longer term, among them the substantial advantages of serving a sentence in a county jail. For instance, most county inmates serve their sentence in a jail near their former residence, whereas state prisoners may be incarcerated far from home. *Id.* at 551, 315 *A.*2d 720. County inmates may qualify for a work-release program that would allow them to hold on to their job while serving their sentence. *Ibid.* Under *N.J.S.A.* 30:4–123.12 (repealed by *L.*1979, *c.* 441), a sentence to a county jail did not constitute a prior offense, and thus if a defendant was later sentenced to a state prison, he or she could still qualify for parole release as a first offender. *Ibid.* Finally, and perhaps most important, a county-jail sentence does not bear the stigma of a state-prison sentence. *Ibid.*

The Code has carried forward this philosophy of treating county-jail terms and state-prison terms distinctively. For example, county-jail inmates as a distinct class from state-prison inmates are accorded different periods of parole ineligibility. *N.J.S.A.* 30:4–123.51a. *See State v. Rosado,* 131 *N.J.* 423, 621 *A.*2d 12 (1993).

Our courts have consistently acknowledged the distinction between probationers serving a county-jail sentence and state prisoners and have read that distinction into the sentencing provisions of the Code. In *Kreidler, supra*, 211 *N.J.Super.* at 276, 511 *A.*2d 733, the court held that the *N.J.S.A.* 2C:44–1d presumption of imprisonment for persons convicted of first- and second-degree crimes refers to "straight sentences of imprisonment authorized by *N.J.S.A.* 2C:43–2(b)(3) and not to split sentences of imprisonment to be served as a condition of probation authorized by *N.J.S.A.* 2C:43–2(b)(2)." *Id.* at 279, 511 *A.*2d 733. *See also O'Connor, supra*, 105 *N.J.* at 414, 522 *A.*2d 423 (a split sentence cannot be imposed on a defendant who pleads guilty to an offense that carries a presumption of imprisonment). In *Hartye*, we "reject[ed] defendant's contention that the term of imprisonment in *N.J.S.A.* 2C:44–1e means *any* imprisonment, and that the presumption against incarceration therefore bars imposition of a split sentence." 105 *N.J.* at 419–20, 522 *A.*2d 418.

In enacting the sentencing provisions of the Code, the Legislature did not reject or abandon the longstanding distinction between county-jail sentences and state-prison terms. Further, it enacted section 12 after we had decided *O'Connor* and *Hartye*, which recognized and discussed at length the importance of those distinctions and especially the distinctiveness of a split county-jail sentence. We must assume that the Legislature was aware that a probationary county-jail term was not understood to mean a term of imprisonment as such. We must assume as well that it was conversant with the legal traditions and consistent penal practices that have uniformly recognized the significance of the distinction between a state-prison term and a county-jail term that is imposed as a condition of probation.

The Court's extremely strained interpretation of "term of imprisonment" to include a probationary county-jail sentence would appear to be unprecedented and idiosyncratic. It claims support for its interpretation in the legislative history of section

12 and the Drug Reform Act. The Court says that the Legislature's intent was " 'to limit courts' sentencing discretion, and [to] ensure more uniform, consistent, and predictable sentencing practices.' " *Ante* at 408, 621 *A.*2d at 4 (citing *Assembly Judiciary Committee Statement No. A.3270* at 1 (Dec. 18, 1986). However, to encourage uniformity, consistency, and predictability does not require that judges may not exercise discretion with respect to probationary terms. Nor does it justify the leap from an intent to limit judicial sentencing discretion to the absolute denial of such discretion with respect to those county-jail terms that are a functional part of a probationary sentence. As the Court stated in *Hartye*, "the Code's sentencing framework replaces 'the unfettered discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences.' " 105 *N.J.* at 418, 522 *A.*2d 418 (quoting *State v. Roth*, 95 *N.J.* 334, 345, 471 *A.*2d 370 (1986)). The allowance of judicial discretion over probationary sentences hardly destroys the "structured discretion" that serves generally to produce uniform and fair sentences. The Legislature itself acknowledges that the commendable goal of uniformity in sentencing, which may, for example, be furthered by delegating some sentencing responsibility to county prosecutors, should not be accomplished by removing all sentencing authority from judges. *See, e.g., State v. Shaw*, 131 *N.J.* 1, 618 *A.*2d 294 (1992) (recognizing that Code contemplates a *"shared* exercise of sentencing power" by court and prosecutor with respect to sentencing for certain drug offenses); *State v. Santiago*, 131 *N.J.* 1, 618 *A.*2d 294 (1992) (same); *State v. Peters*, 129 *N.J.* 210, 609 *A.*2d 40 (1992) (same); *State v. Vasquez*, 129 *N.J.* 189, 609 *A.*2d 29 (1992) (same); *State v. Legares*, 127 *N.J.* 20, 601 *A.*2d 698 (1992) (recognizing shared responsibility over extended-term sentencing).

Moreover, the Court does not acknowledge the equally important legislative goal of facilitating the "rehabilitation of drug dependent persons," mentioned in the Reform Drug Act's "Declaration of Policy and Legislative Findings," *N.J.S.A.* 2C:35–1.1.

Rehabilitation, a goal to which probation is especially well suited, reflects a more flexible approach toward sentencing than the Court is willing to impute to the Legislature. As a result, the Court remains oblivious to the fact that a split sentence, a county-jail term imposed as a condition of probation, is in the larger framework of corrections to be viewed as a *probationary* sentence designed to further the ends of rehabilitation.

Within that framework, the role of judicial sentencing discretion acquires greater importance. Trial courts have traditionally exercised broad discretion when sentencing defendants to a probationary term. Probation encompasses numerous standards and special conditions such as jail, fines, restitution, community service, alcohol and drug treatment, child-support payments, and Drug Enforcement and Demand Reduction penalties. A court may mold a probationary sentence to suit the nature of the crime committed, the defendant's particular history, and the goals to be attained. For instance, if the goal of probation is rehabilitation, the court may impose such conditions as counseling and treatment. If the goal includes an element of punishment, the conditions may be a county-jail term and a fine. Other conditions may serve reparative and utilitarian goals. *See* Administrative Office of the Courts, *A Model for Enhancing Probation Supervision: Purpose, Priorities, Practices* 6 (1992).

Through imposing conditions of probation and monitoring the probationer's compliance with those conditions, "[t]he court plays a significant role in determining the work of probation." *Id.* at 43. The court's continuing jurisdiction over the probationer underscores the importance of judicial discretion at the initial stage, when the court determines and imposes the conditions of probation.

Only judges can add, modify, or delete conditions of probation; only judges can extend the probation term or terminate supervision early; and only judges can revoke probation and impose another sentence on a probationer who fails to comply with the original order. [*Ibid.*]

Those considerations surely bear on the nature and extent of the discretion reserved to judges with respect to the modification of a probationary sentence encompassed in a negotiated sentence for specified drug offenses.

The Attorney General has also recognized (at least partially) the distinction between a state-prison term and a probationary county-jail term:

A "term of incarceration" for the purpose of this Directive means a state prison term and shall not include a county jail term imposed as a condition of probation in accordance with *N.J.S.A.* 2C:44–1c, ...

Robert Del Tufo, *Directive Implementing Guidelines Governing Plea–Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms* 5 (September 15, 1992). However, the Attorney General apparently believes that the Legislature intended to abandon that distinction with respect to a plea bargain involving school-zone drug offenses. Thus, while he acknowledges that a probationary county-jail term is not to be equated with a state-prison term, *ibid.*, he recognizes this qualification: "except in a case of a defendant who pleads guilty to a violation of the third degree crime defined in *N.J.S.A.* 2C:35–7 (drug free school zone offense)." *Ibid.* However, the fundamental distinction between a state-prison term and a probationary county-jail term that is recognized by the Attorney General in the Guidelines, in my opinion, is totally inconsistent with the conclusion that under section 12 there is no distinction between a probationary county-jail term and a state-prison term and, because under no circumstances can the latter term be modified by a sentencing court, the former can never be modified.

The Court overreaches when it claims to find support for its position in the legislative history of section 12. The Legislature's goal of uniformity in sentencing is in no way disserved by allowing a court to retain some discretion in an area especially well suited to judicial supervision. Nor are the fearful consequences that the Court posits likely to come to pass if trial courts retain discretion over probationary sentences that in-

clude county-jail terms. One can hardly imagine that our state's trial courts are poised to begin sentencing convicted drug offenders to nominal jail terms. They did not do so before today's decision, and would not do so tomorrow if given the opportunity.

In sum, section 12 simply cannot be construed to equate probationary county-jail terms with state-prison terms to prohibit the exercise of judicial discretion when sentencing a defendant to a probationary term. Nor can such a rendition of section 12 be fairly drawn from the history of its enactment or the objectives of public policy it seeks to effectuate.

The Court by its opinion shifts the delicate balance in the shared exercise of sentencing authority from courts over to prosecutors. I can only wonder why the Court has strained to extend prosecutorial discretion at the expense of judicial discretion when section 12 does not demand it.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—Justice HANDLER—1.